UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SKATEMORE, INC., et al.,

    Plaintiffs,

v.

                                    Case No. 1:21-cv-66

GRETCHEN WHITMER, et al.,              Hon. Hala Y. Jarbou

    Defendants.
_____/

**OPINION**

This is a civil rights action under 42 U.S.C. § 1983 and state law. Plaintiffs are bowling establishments in Michigan that were impacted by executive orders closing their businesses from approximately March 16 to December 20, 2020, due to the COVID-19 pandemic. They sue the Michigan Department of Health and Human Services ("MDHHS") as well as Michigan Governor Gretchen Whitmer and Robert Gordon, Director of the MDHHS. Plaintiffs claim that Defendants seized their property without just compensation, in violation of the Fifth Amendment to the U.S. Constitution and in violation of Article X of the Michigan Constitution of 1963.

Defendants ask the Court to dismiss the complaint (ECF No. 14). Plaintiffs ask for leave to amend their complaint (ECF No. 28). The Court will grant Defendants' motion to dismiss because Defendants are immune from suit in federal court. In addition, the Court will deny Plaintiffs' motion for leave to amend the complaint because the proposed amendment would not save their complaint from dismissal.

**I. BACKGROUND**

According to the complaint, Governor Whitmer issued executive orders mandating the closure of bowling establishments from March 16, 2020, until October 2, 2020, when the Michigan Supreme Court held that she lacked authority after April 30, 2020, to issue or renew executive

orders related to the COVID-19 pandemic. *In re Certified Questions from U.S. Dist. Ct., W. Dist. of Mich., S. Div.*, 958 N.W.2d 1, 11 (Mich. 2020). Thereafter, Director Gordon issued orders, through MDHHS, closing Plaintiffs' establishments from November 18 to December 20, 2020. Plaintiffs allege that these orders wholly prevented them from operating or functioning as businesses and thus the orders constitute "takings" by the government for which Plaintiffs are entitled to compensation.

## II. STANDARD

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

Assessment of the complaint under Rule 12(b)(6) must ordinarily be undertaken without resort to matters outside the pleadings; otherwise, the motion must be treated as one for summary judgment under Rule 56. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). "However, a court may consider exhibits attached to the complaint, public records, items appearing

2

in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).

### III. MOTION TO DISMISS

Defendants argue that Plaintiffs' claims are barred by the Eleventh Amendment and that, in any case, the complaint fails to state a claim.

**A. Eleventh Amendment Immunity**

**1. MDHHS**

Plaintiffs cannot maintain an action against the MDHHS. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Furthermore, the State of Michigan (acting through the MDHHS) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)).

Plaintiffs argue that the Supreme Court has suggested that the Fifth Amendment might operate as an *exception* to immunity under the Eleventh Amendment. (Pls.' Answer to Def.'s Mot. to Dismiss 9, ECF No. 19.) Plaintiffs cite *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019), which states that "a property owner has a claim for a violation of the Takings Clause as soon as a government takes his property for public use without paying for it." *Id.* at 2170. Accordingly,

3

"the property owner may sue the government at that time in federal court for the deprivation of a right secured by the Constitution." *Id.* (quotation marks omitted). Plaintiffs argue that these blanket statements mean that there is no immunity exception to their ability to seek relief in federal court for a takings claim.

However, the Court of Appeals for the Sixth Circuit squarely rejected Plaintiffs' argument in *Ladd v. Marchbanks*, 971 F.3d 574 (6th Cir. 2020). "The fatal flaw in Plaintiffs' argument is that the Court's opinion in *Knick* says nothing about sovereign immunity." *Id.* at 579. Thus, "*Knick* cannot be the basis for abandoning" the Sixth Circuit's precedent holding that "the States' sovereign immunity protects them from takings claims for damages in federal court." *Id.* at 578.

Plaintiffs also rely on *Penneast Pipeline Co. v. New Jersey*, 141 S. Ct. 2244 (2021), which held that the Eleventh Amendment did not bar claims involving the *federal* government's exercise of its eminent domain power "because the States consented at the founding to the exercise of the federal eminent domain power . . . ." *Id.* at 2263. Plaintiffs' case does not involve a party's exercise of the federal eminent domain power. Thus, *Penneast Pipeline* does not apply. Accordingly, the MDHHS is immune from suit in federal court.

### 2. Whitmer & Gordon

The same logic applies to Plaintiffs' claims against Defendants Whitmer and Gordon, who are sued in their official capacities. (*See* Compl. ¶¶ 16, 17, ECF No. 1.) "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will*, 491 U.S. at 71. Ordinarily, a suit against an individual in his or her official capacity is equivalent to a suit brought against the governmental entity. *See id.* "It is *not* a suit against the official personally, for the real party in interest is the [state] entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). Under *Ex parte Young*, 209 U.S. 123 (1908), however, a plaintiff can sue state officers in their official capacity to enjoin a *prospective* violation of law.

4

*See Ladd*, 971 F.3d at 580. But that exception does not apply here because Plaintiffs do not seek prospective injunctive relief. Indeed, the injury alleged, and the relief sought, is wholly retrospective, not prospective.

Plaintiffs contend that there is an exception to immunity for their claims against Governor Whitmer because the Michigan Supreme Court determined that she lacked statutory authority to issue her orders after April 30, 2020. "State officials are not entitled to eleventh amendment immunity if they are acting ultra vires, that is without proper authority." *Miami Univ. Associated Student Gov't v. Shriver*, 735 F.2d 201, 204 (6th Cir. 1984). But the Supreme Court clarified in *Pennhurst* that an action in violation of state law does not abrogate Eleventh Amendment immunity. "On the contrary, it is difficult to think of a greater intrusion of state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment." *Pennhurst*, 465 U.S. at 105.

Furthermore, the Michigan Supreme Court's holding does not suggest that Whitmer acted "without any authority whatever," i.e., that "there was no 'colorable basis for the exercise'" of her authority. *See Pennhurst*, 465 U.S. at 101 n.11 (quoting *Florida Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 716 (1982) (White, J., concurring in part)). Instead, the Michigan Supreme Court's decision indicates that she acted under authority given to her in the Emergency Powers of the Governor Act of 1945 (EPGA), Mich. Comp. Laws § 30.401 et seq. The Michigan Supreme Court ultimately determined that the EPGA was "an unlawful delegation of legislative power to the executive branch in violation of the Michigan Constitution." *In re Certified Questions*, 958 N.W.2d at 6. But that determination occurred *after* the Governor issued her orders, so it does not suggest that the Governor acted ultra vires. Thus, the ultra vires exception does not apply.

### B. Failure to State a Fifth Amendment Claim

The Eleventh Amendment is sufficient to bar the claims in Plaintiffs' complaint. Nevertheless, the Court will also examine Defendants' arguments that the complaint fails to state a claim because Plaintiffs ask for leave to amend the complaint to assert claims against Defendants Gordon and Whitmer in the personal capacities. Such claims would not be barred by the Eleventh Amendment.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Here, Plaintiffs' federal claim alleges a violation of the takings clause in the Fifth Amendment, which prohibits the taking of "private property . . . for public use, without just compensation." U.S. Const., Am. V.

### 1. Regulatory Takings

There are two types of takings, physical takings and regulatory takings. A physical taking occurs when "the government physically takes possession of an interest in property for some public purpose[.]" *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 321 (2002). Here, Plaintiffs allege a regulatory taking, which occurs when "regulations . . . prohibit a property owner from making certain uses of her private property." *Id.* at 321-22. A physical taking always requires compensation, whereas a regulatory taking "'necessarily entails complex factual assessments of the purposes and economic effects of government actions.'" *Id.* at 323 (quoting *Yee v. Escondido*, 503 U.S. 519, 523 (1992)). In other words, "'if regulation goes too far, it will be recognized as a taking[,]" requiring compensation. *Id.* at 326 (quoting *Penn. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922)).

### 2. *Lucas* & Categorical Takings

Plaintiffs compare their case to *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992), in which the Supreme Court held that a regulation "goes too far" when it calls upon the owner of real property to "sacrifice *all* economically beneficial uses in the name of the common good, that is, to leave his property economically idle[.]" *Id.* at 1019. In such a case, the property owner is *categorically* entitled to compensation, "except to the extent that 'background principles of nuisance and property law' independently restrict the owner's intended use of the property." *Lingle v. Chevron, U.S.A., Inc.*, 544 U.S. 528, 538 (2005) (citing *Lucas*, 505 U.S. at 1026-32). But *Lucas* does not apply here. The Supreme Court has clarified that the categorical rule in *Lucas* only applies to "the extraordinary case in which a regulation *permanently* deprives property of all value[.]" *Tahoe-Sierra*, 535 U.S. at 332 (emphasis added). Plaintiffs do not allege that the orders at issue permanently deprived their property of all value. To the contrary, they allege that they have resumed business. A temporary restriction on use like the one at issue here does not necessarily require compensation. *See Tahoe-Sierra*, 535 U.S. at 341-42 (examining a 32-month moratorium on development). For temporary use restrictions, the Court must apply the multi-factor test set forth in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978). *See Tahoe-Sierra*, 535 U.S. at 342.

### 3. *Penn Central* Test

Under *Penn Central*, the Court determines whether a regulatory taking requires compensation by considering several factors, including: (1) "[t]he economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations"; and (2) "the 'character of the governmental action'—for instance whether it amounts to a physical invasion or instead merely affects property interests

7

through 'some public program adjusting the benefits and burdens of economic life to promote the common good[.]'" *Lingle*, 544 U.S. at 538-39 (quoting *Penn Central*, 438 U.S. at 124).

Applying those factors, Plaintiffs do not state a Fifth Amendment claim. The Court accepts that Defendants' regulations had a significant economic impact on Plaintiffs. According to their complaint, Plaintiffs were not able to conduct any business at all for several months. On the other hand, it is less obvious that Defendants' regulations interfered with Plaintiffs' investment-backed expectations. Although Plaintiffs understandably expected to conduct business as usual when 2020 began, the pandemic forced everyone to adjust their expectations. Plaintiffs cannot plausibly contend that they expected to continue operating normally when doing so posed an obvious risk of spreading a contagious and dangerous virus. "'[A]ll property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community,' and the Takings Clause did not transform that principle to one that requires compensation whenever the State asserts its power to enforce it." *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 491 (1987) (citations omitted)).

In addition, the character of the government action here strongly weighs against a finding that Defendants' regulations require compensation. Those regulations cannot be characterized as a physical invasion by government. This is instead a situation in which government officials "reasonably concluded that 'the health, safety, morals, or general welfare' would be promoted by prohibiting particular contemplated uses of land[.]" *Penn Central*, 438 U.S. at 125. "It is a traditional exercise of the States' 'police powers to protect the health and safety of their citizens.'" *Hill v. Colorado*, 530 U.S. 703, 715 (2000) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996)). "A prohibition simply upon the use of property for purposes that are declared, by valid legislation, to be injurious to the health, morals, or safety of the community, cannot, in any just

8

sense, be deemed a taking or an appropriation of property for the public benefit." *Mugler v. Kansas*, 123 U.S. 623, 668-69 (1887).

Plaintiffs object that the statement in *Mugler* does not apply because Defendants did not act according to "valid legislation." This argument is unavailing. The EPGA was valid when Defendant Whitmer acted; it was not declared unconstitutional until later. Also, as Defendants note, the MDHHS repeatedly issued orders under its own authority to reinforce the Governor's orders. *See* Michigan.gov, Rescinded MDHHS Epidemic Orders, https://www.michigan.gov/coronavirus/0,9753,7-406-98178_98455-546528--,00.html. Plaintiffs do not contend that the MDHHS's orders were invalid. And more importantly, the validity of Governor Whitmer's orders does not alter the character of the government action under the *Penn Central* test. Indeed, the issue in Plaintiffs' Fifth Amendment claim is whether Defendants complied with the United States Constitution, not whether Defendants complied with the Michigan constitution.

Plaintiffs argue that it is "irrelevant" that Defendants' orders are no longer in effect; they urge the Court to analyze this case under the "same framework as if Defendants had taken Plaintiffs' property permanently." (Pls.' Answer to Defs.' Mot. to Dismiss 31, ECF No. 19.) However, the Supreme Court's opinion in *Tahoe-Sierra* precludes the Court from doing so. In other words, unlike the permanent deprivation of property value in *Lucas*, the temporary restrictions on the use of Plaintiffs' property do not categorically entitle them to compensation. Thus, the Court must use the *Penn Central* test to decide their claim.

Plaintiffs also rely on *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021) and *Arkansas Game & Fish Commission v. United States*, 568 U.S. 23 (2012) to argue that temporary takings are compensable. Those cases are inapposite. In *Arkansas Game & Fish Commission*, the Supreme Court held *"*simply and only, that government-induced flooding temporary in duration

9

gains no automatic exemption from Takings Clause inspection." 568 U.S. at 39. This Court does not hold otherwise. The Court does not hold that Defendants' regulations are automatically exempt from the Takings Clause. Rather, the Court finds that, under the *Penn Central* test, Plaintiffs do not state a claim.

In *Cedar Point Nursery*, the Supreme Court held that *Penn Central* "has no place" where "a regulation results in a *physical appropriation* of property" because in that circumstance "a *per se* taking has occurred." 141 S. Ct. at 2072 (emphasis added). The regulation in that case gave a third party "a right to physically enter and occupy" the plaintiffs' property "for three hours a day, 120 days per year." *Id.* Although the taking was temporary, rather than permanent, it was a categorical taking because it amounted to a physical appropriation of the property. "Rather than restraining the growers' *use* of their property, the regulation appropriate[d] for the enjoyment of third parties the owners' right to exclude." *Id.* (emphasis added). In contrast, the regulations at issue here restrained Plaintiffs' *use* of their property. They did not require Plaintiffs to give third parties physical access to their property. Thus, *Cedar Point* and its rationale do not apply.

In short, even if the federal claim in Plaintiffs' complaint was not barred by immunity, it would be subject to dismissal for failure to state a claim. Other courts have reached the same conclusion for complaints alleging that closure orders and other business restrictions implemented in response to the pandemic constituted a taking under the Fifth Amendment. *See, e.g.*, *TMJ 64, Inc. v. Harris*, No. 2:20-cv-2498-JPM, 2021 WL 863202, at *5 (W.D. Tenn. Mar. 8, 2021) (dismissing a Fifth Amendment takings claim challenging closure of limited-service restaurants); *Daugherty Speedway, Inc. v. Freeland*, No. 4:20-CV-36-PPS, 2021 WL 633106, at *5 (N.D. Ind. Feb. 17, 2021) (same for closure of racetrack); *Lebanon Valley Auto Racing Corp. v. Cuomo*, 478 F. Supp. 3d 389, 403 (S.D.N.Y. 2020) (same).

## IV. MOTION TO AMEND

As indicated, Plaintiffs ask for leave to amend the complaint to avoid dismissal. They would like to assert their claims against Defendants Whitmer and Gordon in Defendants' personal capacities. Although the Court should "freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), the Court can deny leave when amendment would be "futile" because the amended complaint would not survive a motion to dismiss. *See Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

For the reasons discussed in the previous section, if the Court were to grant leave to amend, the Court would dismiss the federal claim for failure to state a claim. The Court's analysis does not change where Plaintiffs assert claims against Defendants in their personal capacities.

In addition, the Court would decline to exercise jurisdiction over Plaintiffs' state-law claim. "Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007). "Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006). At this early stage of the proceedings, it does not appear that interests of judicial economy and the avoidance of multiplicity of litigation would outweigh concerns over deciding state law issues. Thus, the Court would dismiss the state law claim without prejudice. Accordingly, amendment would be futile because Plaintiffs' proposed amended complaint would face the same result as the original complaint.

## V.  CONCLUSION

For the reasons herein, the Court will dismiss the complaint because Plaintiffs' claims are barred by the Eleventh Amendment.  The Court will also deny Plaintiffs' motion for leave to amend their complaint.

An order and judgment will enter consistent with this Opinion.


Dated:  September 2, 2021                                    /s/ Hala Y. Jarbou
                                                                                                       HALA Y. JARBOU
                                                                                                       UNITED STATES DISTRICT JUDGE